R. C. HOUSTON v. I. J. DICKSON ET AL.

(Case No. 5837.

1. VENDOR'S LIEN—HOW CREATED—A vendor's lien is given by the law when one person sells land to another on credit; it is not the result of agreement, nor of a mere secret intention.

2. SAME—WAIVER—It may be waived by such facts as show that the seller relies on other security, or relinquishes the right to the lien created by the law, but the absence of knowledge that the law gives such a security, or a mere secret intention not to claim it, does not affect the right.

3. SAME—NOTICE—PROMISSORY NOTES—M. purchased a tract of land from D. without notice of the existence of a note made by D. in part payment of the purchase money for the same tract ; when informed of its existence he was still indebted to D. on a note for the purchase money in a sum in excess of the amount due on D.'s note, and agreed to make no settlement with D. until his (D.'s) note was paid. *Held*, The land would be subject to the vendor's lien unless the note executed by M. was or might be in such a condition as to impose an absolute liability on M. to pay it to a third person. (Rawles *v.* Perkey, 50 Tex., 311.)

4. SAME—TITLE—CONSIDERATION—If the vendor has no valid right to or interest in the land which will pass to or vest in the vendee, he cannot claim a vendor's lien to secure notes given in payment for it. (Palmer *v.* Chandler, 47 Tex., 335.)

APPEAL from Wilson. Tried below before the Hon. Geo. McCormick.

R. C. Houston instituted this suit against I. J. Dickson and James McAllister on the following note executed by Dickson to A. L. Yelvington :

"On or before the first day of January, A. D. 1884, I promise to pay A. L. Yelvington, or order, for value received, the sum of sixty dollars, with interest at the rate of ten per cent. per annum.

Lavernia, December 18, 1882.                     I. J. DICKSON."

The petition alleged that the note was given in part payment of the purchase money of a tract of one hundred and sixty acres of land, purchased by Dickson from Yelvington on December 18, 1882; that McAllister purchased the land from Dickson with notice of the existence of the note and of the vendor's lien on the land; that McAllister had full notice of the existence of the note and lien before he paid the purchase money of the tract to Dickson, and that plaintiff was informed and believed that the purchase money was still unpaid. Plaintiff prayed for judgment against Dickson for the sum due on the note, and against McAllister for foreclosure of the vendor's lien, the security of the note.

Dickson answered that the note was without consideration; that no title to the land had been conveyed by the deed; that Yelving-

ton had no title to the land, and that Houston knew when he purchased the note that it was given without consideration. McAllister answered by general denial.

Yelvington testified that he bought the land from A. P. Waldo, but took no deed from him, and that when he sold to Dickson, the deed was made direct from Waldo to Dickson; that in addition to the title from Waldo, he had bargained for the land from the widow of Allen Robinson, the original grantee, and, at the time of the sale to Dickson, had paid all the consideration for her interest except $20.00, which sum Dickson was to pay; that it was not his intention to rely on a vendor's lien as security for the note given him by Dickson, and there was no agreement as to such lien, as he did not regard the title purchased from Waldo as of any value.

McAllister testified that he paid $60.00 cash and gave his note for $100 to Dickson for the land, and that his note was still unpaid when he was notified of the existence of the note sued on; that he paid the widow and heirs of Allen Robinson $50.00 for the land.

It was shown that the land was patented to the heirs of Allen Robinson, on June 19, 1884, and that proof of occupancy, which the law required, was not filed in the general land office until May 16, 1884.

The second charge of the court contained this clause: "You will determine, from the evidence, what was the intention of the contracting parties. If, from the evidence, it was not the intention of the parties to preserve such lien, or it was waived, you will find for the defendant, McAllister, otherwise for plaintiff as against McAllister."

In the third paragraph of its charge the court instructed the jury that if McAllister purchased from Dickson in ignorance of the existence of the lien, then the land was not burdened by it.

In the fourth paragraph it defined notice, and stated what would be sufficient to charge McAllister with notice of the lien.

*B. F. Ballard,* for appellant, cited: Perry *v.* Woodson, 61, Tex., 228; Rawles *v.* Perkey, 50 Tex., 316; Senter *v.* Lambeth, 59 Tex., 260; Irvin *v.* Garner, 60 Tex., 49; Dibbrell *v.* Smith, 49 Tex., 474; Flanagan *v.* Cushman, 48 Tex., 244; Joiner *v.* Perkins, 59 Tex., 301; Hicks *v.* Morris, 57 Tex., 659; White *v.* Downs, 40 Tex., 226; Briscoe *v.* Bronaugh, 1 Tex., 326.

*J. B. Polley,* for appellees, cited: Palmer *v.* Chandler, 47 Tex., 332, 333.

Stayton, Associate Justice.—If it be assumed that there were facts proved from which ordinarily a vendor's lien would arise, then it must be held that the second paragraph of the charge given should not have been given. That charge authorized the jury to believe that in the opinion of the court there was evidence from which they might find that the vendor's lien was waived. There was no evidence from which the jury would have been authorized to find a waiver of the lien, for such a lien is given by the law when one person sells land to another on credit, and is not the result of agreement, nor of a mere secret intention to reserve it.

It may be waived by such facts as shown that the seller relies on other security, or relinquishes his right to the security which the law gives him; but the absence of knowledge that the law gives such a security, or a mere secret intention not to claim it, does not affect the right.

The third and fourth paragraphs of the charge given would have been proper in a case in which the evidence tended to show that one had purchased and fully paid for land on which a vendor's lien existed, without knowledge of its existence, but while in this case there is a conflict in the evidence as to whether McAllister knew of the claim of lien before he bought, yet, there is no conflict in the evidence as to the fact that, at the time he did receive such information, he was still indebted to Dickson on the purchase money in a sum in excess of that still due the appellant on the note sued on.

The evidence further shows that McAllister agreed to make no settlement or payment to Dickson until the note sued on was paid.

Under this state of facts, the land would be subject to the lien unless the note executed by McAllister to Dickson, under the rules applicable to negotiable paper, was, or might be, in such condition as to impose an absolute liability on McAllister to pay it to a third person. Knowles v. Perkey, 50 Tex., 311.

Whether the facts proved in this case were sufficient to establish the vendor's lien ought to have been submitted to the jury under a proper instruction as to the state of facts which would give such a lien.

If it shall appear that neither Yelvington, nor those through whom he claimed, had any valid right or interest in the land at the time the transactions occurred which are claimed to have operated a sale to Dickson, and that the land was then a part of the vacant public domain, title to which has since been perfected by McAllister, or by the heirs and widow of Robinson, then no vendor's lien can exist unless the title has been so perfected in pursuance of some contract

which gave right to Yelvington to have the title so perfected.    To give the lien it must be shown that Yelvington had acquired such right as will cause the patent issued to the heirs of Allen Robinson on June 19, 1884, to inure to his benefit; for, as said in Palmer v. Chandler, 47 Tex., 335, "if the vendor has no valid right to or interest in the land which will pass to or vest in the vendee, he cannot claim a vendor's lien to secure notes given in payment for it.   It would be simply absurd to say that there is a vendor's lien to secure the payment of the purchase money when the vendor had no such title or interest in the land sold as will serve as a consideration for a promise to pay the purchase money, and when the vendee may recover it back if paid."

If all the right which McAllister has in the land is that secured by the deed made to him by the widow and heirs of Robinson, then it is evident that no vendor's lien exists to secure the note sued upon, if the entire consideration for that deed was independent of and in no way connected with any former transaction to which Yelvington was a party.

For the errors in the charge of the court the judgment will be reversed and the cause remanded.

It is so ordered.

REVERSED AND REMANDED.

[Opinion delivered May 14, 1886.]