BLAIR et al. v. ARMSTRONG et al.
(No. 7565.)

(Court of Civil Appeals of Texas. Galveston. April 24, 1918. Rehearing Denied May 16, 1918. Second Petition for Rehearing Denied May 23, 1918.)

1. VENDOR AND PURCHASER ⬀284—ACTION TO ENFORCE LANDLORD'S LIEN—PETITION—SUFFICIENT DESCRIPTION.

In a suit to foreclose implied vendor's liens, judgment for defendants was properly directed, where the petition contained no sufficient description of the land or lease involved to enable the court to locate it to the end that judgment with reference thereto could be made definite and certain.

2. VENDOR AND PURCHASER ⬀284—ENFORCEMENT OF VENDOR'S LIEN—DESCRIPTION—DIRECTED VERDICT.

In such suit a judgment for defendants was properly directed where plaintiffs' lease upon any land claimed by a part of the defendants, was not sufficiently described or identified, and where its terms and obligations were not alleged, and the alleged leased land was not described in the pleadings, and nothing in the record made its description definite and certain or so located as to enable the court to render judgment with reference thereto.

3. VENDOR AND PURCHASER ⬀284—ACTION TO FORECLOSE VENDOR'S LIEN — TITLE — DIRECTED VERDICT.

In such suit a verdict for defendants was properly directed where it did not appear that plaintiffs had any title to any of the property claimed to have been sold by them, but the petition and the contract of sale attached showed that prior to such alleged sale plaintiff had conveyed all their rights and interests in and to the property in controversy.

4. VENDOR AND PURCHASER ⬀284—VENDOR'S LIEN—DIRECTED VERDICT.

In a suit to enforce implied vendor's liens arising upon the sale of lease interests, contract interests, stock, and other personal property, a directed verdict for defendants was proper where neither the pleading nor the evidence showed anything to enable the court to fix the amount for which the lien should be foreclosed.

5. VENDOR AND PURCHASER ⬀265(1) — ENFORCEMENT OF VENDOR'S LIEN — RIGHTS OF PURCHASER.

In a suit to enforce implied vendor's liens upon interests in a lease, it could not be contended that the property which the defendants purchased from the original purchaser was subject to any kind of implied lien to secure the payments of debts due by the original purchaser for personal property purchased by him from plaintiffs.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by Mrs. Love Blair and husband against B. C. Armstrong and others. Judgment by default against defendant Armstrong, and for other defendants upon a directed verdict, and plaintiffs appeal. Affirmed.

Stevens & Stevens, of Houston, for appellants. E. P. & Otis K. Hamblen, of Houston, for appellees.

LANE, J. This suit was instituted by Mrs. Love Blair and her husband, F. M. Blair, against B. C. Armstrong, J. H. McFarlane, C. F. Gydeson, and R. C. Rucker, to recover judgment against Armstrong for a certain sum alleged to be due them by said Armstrong, and for certain property described in their petition, and to foreclose their alleged implied vendor's lien as against all the defendants upon certain land and property sought to be described in their said petition. There were also other persons made parties to the suit, but, as they passed out of the case without complaint, no further mention of them will be made in this opinion.

In their petition the plaintiffs, Blair and wife, alleged the execution of a contract between F. M. Blair and wife, Love Blair, and B. C. Armstrong which reads as follows:

"Whereas, the said parties of the first part are the owners of certain rights, interest, claims, and holdings in a certain lease of land made by Pattillo Higgins and his wife, Mrs. Annie Higgins, of date July 11, 1913, to the said F. M. Blair, and of certain rights, interests, claims, and holdings under a certain contract between the Pet Oil Company, a corporation, and H. O. Norman, of date September 10, 1914, regarding the same land, and of certain rights under a contract between said F. M. Blair, H. P. Dolson, and H. O. Norman, of same date, concerning same land, the last said contract being acknowledged before W. C. Jourdan, notary public, Harris county, Tex., which rights, interests, claims, and holdings are traced through and from a certain contract of lease between Mrs. Anna Allen Wright, joined by her husband, George Wright, and Pattillo Higgins, of date April 11, 1917, recorded in Volume 21, page 493, of the Record of Contracts, in the office of the county clerk of Harris county, Tex., all of the foregoing instruments being here referred to and made a part hereof;

"And whereas, the said parties of the first part are owners of and interested in, and have certain rights, interest, claim, and holdings in and to certain stock and stock certificates in and of the Pet Oil Company, a corporation;

"And whereas, the parties of the first part are the owners of, and have certain rights, title, interest, claims, and holdings in and to, certain oil well equipment now being and situated on the land contracted about, said contract between Mrs. Annie Higgins, joined by her husband, Pattillo Higgins, upon the one part, and F. M. Blair, trustee, upon the other part, being the land described by metes and bounds, and being all and any of said equipment as same now exists so situated, of every description whatsoever;

"And whereas, the said Blair conveyed the rights conveyed to him as trustee to the Pet Oil Company, a corporation, and the said Pet Oil Company conveyed said rights to the Progressive Oil Company, a partnership, without any consideration moving;

"And whereas, there are certain claims outstanding in favor of said F. M. Blair against said Pet Oil Company which he hereby agrees shall be and they are wholly canceled as a part of the consideration hereof;

"And whereas, there are certain debts claimed and held against said Pet Oil Company by other persons, all and every of which the said F. M. Blair hereby agrees shall in no wise be held against any of the property, rights, interests, claims, or holdings, or any item or property herein conveyed or contracted about, so that said Armstrong shall be held in all things, harmless as to all and every of such debts, and said Blair hereby warrants all items, properties, etc., herein mentioned free of all and every of such debts;

"And whereas, the parties of the first part sold and assigned to the party of the second part each and every of the items of property hereinbefore recited as owned by them, or in which

they have certain rights, interests, title, claims, and holdings, or either, in consideration as aforesaid, and of the sum of $250 cash, the receipt of which is hereby acknowledged from said Armstrong, and the note of said Armstrong for $250, payable $50 per month, which is received by the parties of the first part, and the further consideration of 500 shares of stock, at $1 per share, in the B. C. Armstrong Oil Company, a corporation now in process of organization, which are to be issued to said Love Blair immediately upon the formation of said corporation, out of the stock to belong to said Armstrong, issued to him on account of the assets of said corporation put into same by said Armstrong;

"And whereas, the said Armstrong has purchased from said Pattillo Higgins and wife all rights under said contract between said Blair, trustee, hereinbefore recited, and has become the full owner of all such rights;

"And whereas the parties of the first part claim to be interested in the assets of the said Pet Oil Company, and to own certain interests therein, all of which are conveyed and assigned and set over to said Armstrong hereby:

"Now, therefore, upon the consideration aforesaid, know all men by these presents that the parties of the first part have this day sold, assigned, conveyed, bargained, and set over to said party of the second part all our rights, title, interest, claim, and holding in and to each and every of the items of property hereinbefore mentioned, and in and to said leases or contracts, and in and to all assets of said Pet Oil Company, so that the party of the second part shall be and is subrogated to every right, title, interest, claim, and holding we or either of us have or had in all and every of said contracts or leases, or any and all items of said property, so that said party of the second part shall be and become the full owner of all of said items, and of each and every of the rights, title, interests, claims, and holdings heretofore had by us or either of us in and to any and all of said leases or contract, wells, equipment, assets, stock, and stock certificates of the Pet Oil Company, and any and all other items hereinbefore mentioned, and all of same, including said stock certificates in said Pet Oil Company, are hereby sold, assigned, bargained, conveyed, and set over to said party of the second part, to be as wholly his as they were ever in any way the property of said parties of the second part.

"And we hereby warrant all of same free of any lien, claim, or indebtedness, or incumbrance whatsoever. To have and to hold the same to the said B. C. Armstrong, his heirs and assigns, forever.

"Witness our hands this 31st day of July, 1915. Signed, executed, and delivered in duplicate.    F. M. Blair.
                    "Love N. Blair.
                    "B. C. Armstrong."

They alleged that by said contract they sold to B. C. Armstrong all their property rights, interest, claims, and holdings in and to the properties and things mentioned therein, for the consideration therein expressed. They further alleged that after the execution of said contract, but, however, on the same day of its execution, said Armstrong notified them that he would be unable to organize and incorporate his contemplated oil company, and therefore would be unable to deliver the 500 shares of stock mentioned in said contract; that they then orally agreed with Armstrong that in lieu of the 500 shares of stock and the $250 note to be paid in monthly installments mentioned in said contract the said Armstrong should execute

and deliver to them his promissory note for $750, with good and sufficient solvent indorsers and security, together with a lien on said properties and premises conveyed by the contract. Among other things, they pray for a judgment for $700, for a foreclosure of their equitable implied vendor's lien, and for judgment for certain personal property alleged to have been left by them on the premises in question and which was not included in the sale made to Armstrong, "if the same can be located; but, if the same cannot be located, then that they have judgment for the value of said articles." No parties were named in the prayer against whom judgment was asked.

In view of the disposition we shall make of the appeal, we deem the above a sufficient statement of the allegations of the plaintiff's petition.

The defendant Armstrong made no answer, and judgment by default was rendered against him in favor of plaintiffs for the sum of $700, with interest thereon from July 31, 1915, at the rate of 6 per cent. per annum until paid.

Defendants J. H. McFarlane, C. F. Gydeson, and R. C. Rucker filed their answer: First, excepting and demurring to plaintiffs' petition on the grounds that said petition alleged no cause of action against said defendants or either of them; second, denying each and every allegation in said petition contained; third, alleging that they are purchasers of the property in question for value without knowledge of plaintiffs' now asserted claim, that plaintiffs made the conveyance to Armstrong as alleged in their petition and placed him in possession of the property conveyed with the outward appearance of being the owner of same free from and clear of any claim thereon by plaintiffs, and that defendants purchased said property under such circumstances believing said property to be free from any lien of plaintiffs, that before they purchased said properties plaintiffs had executed and delivered to Armstrong a receipt showing that they had received a secured note for $750 in lieu of the oil stock and $250 note mentioned in the contract between said Armstrong and plaintiffs, and had permitted Armstrong to exhibit said receipt to defendants, thus showing that no lien existed against said property in plaintiffs' favor, and that by reason thereof they are estopped to assert any lien against said property. They also alleged that they were the owners of all of said property, and prayed for judgment therefor as against plaintiffs.

After the evidence was closed the court instructed the jury selected to try the cause to return a verdict for defendants McFarlane, Gydeson, and Rucker as prayed for by them. The jury returned a verdict as instructed by the court, and judgment in accordance with said verdict was rendered and entered.

[1-4] The contention of appellants, which, if decided against them, will result in an affirmance of the judgment of the trial court, is that the undisputed evidence shows that they had an implied equitable vendor's lien on the land sought to be described in their petition, that they were entitled under the law and evidence to a judgment against all defendants foreclosing their said lien, and therefore the court erred in instructing a verdict for the defendants McFarlane, Gydeson, and Rucker.

We do not think the court erred in its peremptory instruction to the jury. We reach such conclusion: First, because there is no sufficient description of the land involved in this suit in plaintiffs' petition to enable the court to locate the same, to the end that judgment with reference thereto could be made definite and certain; second, because if plaintiffs ever owned any lease upon any land now claimed by defendants McFarlane, Gydeson, or Rucker, the same is not sufficiently described nor identified, nor the terms, rights, and obligations thereof made known, nor was any land upon which the supposed lease existed in any manner described in the pleading, nor was there reference to any instrument found in the record whereby the description of the land might be made definite and certain so that the same may be located, thereby enabling the court to render judgment with reference thereto; "the court had no means of determining by decree the nature, terms, conditions, rights, and obligations of the supposed lease, nor the royalty to be paid, nor the requirements to be performed, nor the location of the three acres of land in lot 10 that appellant says was covered by their lease"; third, because from the pleadings it did not appear that plaintiff had any title to any of the property claimed to have been sold by them to Armstrong at the time of such pretended sale, but, on the other hand, it is shown by the plaintiffs' petition, and the contract of sale attached thereto as a part thereof, that prior to such pretended sale plaintiffs had conveyed to the Pet Oil Company, a corporation, all their rights, claim, and interest in and to the property in controversy (Houston v. Dickson, 66 Tex. 79, 1 S. W. 375); fourth, it is shown by the pleadings of the plaintiff that they attempted to convey to Armstrong, for a lump sum, certain rights, claims, and holdings in a certain lease of land, and to certain rights, interest, claims, and holdings under a certain contract between the Pet Oil Company and H. O. Norman regarding the same land, and to certain rights under a contract between plaintiff F. M. Blair, H. P. Dolson, and H. O. Norman, concerning same land, and to certain rights, interest, claims, and holdings in and to certain stock and stock certificates in and of the Pet Oil Company, and to certain rights, title, interest, claims, and holdings in and to certain oil well equipment situated on the land contracted about, and it is not shown by either pleadings or evidence how much of the consideration named in the contract of sale was for the lease rights, nor how much thereof was for the other properties sought to be conveyed by said contract in order to enable the court to fix the amount for which the asserted implied equitable lien of the plaintiffs should be foreclosed. Neither the petition of the plaintiffs, the contract attached thereto, nor the evidence showed what portion of the consideration named in the contract of sale was for any particular item of property.

Plaintiffs in their petition admit the receipt of $300 cash payment from Armstrong, and it was not made to appear to the trial court that said payment was not the full value of the leasehold conveyed by plaintiffs to Armstrong, and that the unpaid portion of the consideration recited in the contract between plaintiffs and Armstrong was not due for the personal property in said contract described.

[5] Appellants' claim as made by the pleadings and evidence in the trial court, and as presented in this court, is so vague, indefinite, and uncertain that neither the trial court nor this court could undertake to grant any relief without doing an injustice to McFarlane, Gydeson, and Rucker, who were not parties to the contract between appellants and Armstrong, and who are not in any manner liable for the debts of Armstrong. It cannot be reasonably contended that the property which they purchased from Armstrong is subject to any kind of implied lien to secure the payment of debts due by Armstrong for personal property purchased by him from appellants. We might assign other valid reasons why we think the trial court properly instructed a verdict for McFarlane, Gydeson, and Rucker, but it is unnecessary, as those already given are amply sufficient.

There was neither pleading nor evidence calling for the submission of the question of appellants' right to a rescission of the contract between them and Armstrong. We therefore overrule the second assignment.

The judgment of the trial court is affirmed.

Affirmed.