[Sac. No. 1652. In Bank.—November 30, 1909.]

WILLIAMSON FINNELL, Respondent, v. JOHN FIN-
NELL, JR., as Administrator of the Estate of John Fin-
nell, Deceased, and THE FINNELL LAND COMPANY,
Appellants.

VENDOR'S LIEN—DEED FROM SON TO FATHER—FAMILY SETTLEMENT OR
SALE—NOTE TAKEN FOR PURCHASE PRICE—SUBSEQUENT PUR-
CHASERS.—A son who deeds to his father a tract of land, not by
way of a family settlement or compromise, but as an out and out sale,
and takes from him his promissory note, not as a substitute for the
purchase price, but merely to evidence the amount thereof still
owing, acquires at the time of sale a vendor's lien on the property
conveyed for the unpaid purchase price, which is valid against every
one claiming under the buyer except a purchaser or encumbrancer
in good faith and for value.

ID.—WAIVER OF LIEN.—The right to the vendor's lien against the prop-
erty conveyed is a personal one, and may be waived and relinquished
without consideration and without a writing, and when once waived
is gone forever.

ID.—HOW LIEN MAY BE WAIVED—PRESUMPTION OF LIEN—IGNORANCE
OF RIGHT TO LIEN.—If the vendor do any act manifesting an inten-
tion on his part not to rely on the lien given by law for the payment
of the purchase price, such as taking security therefor, without an
express agreement that he may still have the lien, the lien will not
exist; but the lien is presumed to exist and is an incident of the
transaction of sale in all cases unless the intention of the vendor
that it shall not exist be clearly manifested by his acts or declara-
tions, and the burden of proof is on the vendee or his successors to
show such intention. The mere fact that the vendor did not know
that the law gave him a lien cannot affect his right thereto.

ID.—INTENTION TO WAIVE LIEN, HOW MANIFESTED.—The act manifest-
ing such an intention must be one substantially inconsistent with the
continued existence of the lien, and cannot be inferred from the mere
fact that the parties may not have contemplated the assertion of the
lien in the first instance.

ID.—SECRET THOUGHTS AND EXPECTATIONS OF VENDOR IMMATERIAL.—In
determining the question of the creation and continued existence of
the vendor's lien, it is immaterial what were the secret thoughts or
expectations of the vendor as to where he was to get the purchase
price. The material inquiry is whether he had done any act or made
any statement that manifested his intention to abandon any right
given him by law to enforce his claim against the land, and to look
solely to the vendee for payment.

Id.—Evidence Reviewed—Lien not Waived.—It is held, upon a review of the evidence, that although there was nothing to indicate any express agreement of the parties, written or parol, relative to the creation of a vendor's lien, still there was nothing in the circumstances of the transaction showing an agreement or understanding that no vendor's lien should exist, or that all right to such a lien should be waived.

Id.—Agent to Negotiate Sale—Intention of Vendee to Mortgage Land.—The mere fact that officers of a bank, who acted as limited agents for the vendor in inducing the vendee to purchase the property, had knowledge at the time of the sale of the intention of the vendee to mortgage the land to the bank as security for his indebtedness to it, cannot be held to indicate any assent by the vendor to a waiver of his right to a vendor's lien.

Id.—Refusal of Vendee to Give Mortgage for Purchase Price.—The fact that the vendor asked the vendee to give a mortgage as security for the balance of the purchase money, and that the vendee refused to do so, was not a manifestation of an intent by the vendor to waive his vendor's lien.

Id.—Subsequent Conveyance to Corporation Organized by Vendee.—A corporation, subsequently organized by the vendee, and of which he became the first president and the sole beneficial stockholder, and to which he conveyed the land purchased by him in consideration of the issuance of its entire capital stock to himself and to dummy directors and stockholders, is charged with all the knowledge possessed by the vendee in regard to the vendor's right of lien.

Id.—Continuance of Right to Enforce Lien—Statute of Limitations—Note Given for Purchase Price.—The right of a vendor to enforce his lien continues, unless waived, so long as an action can be commenced for the purchase money, and where a note for the purchase money is given, payable at a future day, an action to enforce the lien may be commenced at any time before the lapse of the period within which an action can be brought on the note.

Id.—Laches—Applicability of Doctrine to Cases within Statute of Limitations.—Where an express statute of limitation applies to a suit in equity, mere delay to commence the suit for a period less than that of the statute of limitations is never a reason for dismissing the proceeding. There must appear, in addition to mere lapse of time, some circumstance from which the defendant or some other person may be prejudiced, or there must be such lapse of time that it may be reasonably supposed that such prejudice will occur if the remedy is allowed.

Id.—Doctrine of Laches as Applied against Corporation—Changes in Stockholders.—Assuming that as against a corporation whose stock is transferable in the open market and likely to pass into the hands of innocent purchasers, a person having a mere vendor's lien against property held by the corporation must assert his claim promptly, and that any unreasonable delay in asserting it will fore-

close his right if stock of the corporation has been transferred to purchasers in good faith and without notice, such doctrine is inapplicable, where the only transfers of stock were made to persons having full knowledge of the facts creating the vendor's lien.

ID.—KNOWLEDGE OF FACTS CREATING LIEN BY STOCKHOLDER OF CORPORATION.—In an action to enforce the vendor's lien against the vendee and the corporation to whom he had so transferred the land, evidence showing knowledge on the part of the officers of a bank which had become a stockholder in the corporation, of the facts giving the plaintiff the right to enforce his lien, was admissible for the purpose of showing that no prejudice could have resulted from the delay of the plaintiff in commencing the action, and thus meeting the defense of laches.

ID.—EVIDENCE OF VENDOR'S IGNORANCE OF RIGHT TO LIEN.—In an action by the vendor to enforce his lien, evidence of a statement by the plaintiff, made long after the sale and a few months prior to the commencement of the action, as to his ignorance of the law relative to a vendor's lien, is immaterial upon the question whether the transaction was a sale or a family settlement and compromise, or upon the question whether he did or said anything which might tend to show an understanding between the parties for a waiver of any right given him by the law.

ID.—CONVERSATION WITH ATTORNEY—NON-PRIVILEGED COMMUNICATION.—In such an action, a person who was an attorney at law, but who was not at the time acting in that capacity for the defendant, may, notwithstanding an objection by the defendant, testify to a conversation had with him in which he casually expressed a legal opinion in reply to a question asked him.

APPEAL from a judgment of the Superior Court of Tehama County and from an order refusing a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, for Appellant Finnell Land Company.

Charles W. Slack, and W. P. Johnson, for Appellant John Finnell, Jr., Administrator.

Theodore A. Bell, and Bell, York & Bell, for Plaintiff and Respondent.

ANGELLOTTI, J.—This action was brought by plaintiff on October 14, 1904, to enforce an alleged vendor's lien upon

4250 acres of land in Tehama County, sold by plaintiff to John Finnell, Sr., his father, on October 15, 1890, the amount due on account of the purchase price being ninety-two thousand dollars, with interest at six per cent per annum from October 15, 1902, evidenced by a promissory note given by John Finnell, Sr., to plaintiff October 15, 1890, which, by its terms, was payable October 15, 1900. John Finnell, Sr., having died prior to judgment, the defendant John Finnell, Jr., administrator of his estate, was substituted in his place as defendant. Defendant Finnell Land Company, a corporation, the present owner of the land, was alleged to have acquired it from John Finnell, Sr., with full knowledge that he had not paid to plaintiff the amount due on account of the purchase price. Judgment went for plaintiff, directing the sale of the land and the application of the proceeds to the payment of plaintiff's claim, aggregating with interest $121,180.95 and costs, and also in favor of the Finnell Land Company to the extent of providing that, if it pay the amount due plaintiff, or if the land be sold under the judgment, it be subrogated as a judgment creditor of the administrator of the said John Finnell, Sr., its judgment being payable in due course of administration, for the amount so paid or for which said land may be sold. This is an appeal by the Finnell Land Company from those portions of the judgment which make the amount found due plaintiff a lien on said premises, and require the sale thereof to satisfy the same, and also from an order denying its motion for a new trial.

On October 15, 1900, plaintiff was the absolute owner in fee of the land involved, being tracts I, J, K, and L of the Rancho de los Saucos, according to a survey and map thereof made by L. V. Healey and E. N. Eager. This land constituted a part of 15,839.37 acres which had previously been acquired by John Finnell, Sr. The 4250 acres had been conveyed to plaintiff by John Finnell, Sr., by deed dated September 17, 1882, and acknowledged January 17, 1883. On October 15, 1890, plaintiff, by a good and sufficient grant, bargain, and sale deed, sold and conveyed this land to John Finnell, Sr., for a consideration of $127,500, and also the stock thereon for four thousand dollars. John Finnell, Sr., gave to plaintiff his check on the James H. Goodman & Company Bank of Napa for the four thousand dollars for the stock, and also

a check on account of the purchase price of the land for $3,412.80, both of which checks were indorsed over to the bank by plaintiff to satisfy an indebtedness due from him. He further gave plaintiff personal property of sufficient value to make the amount actually paid by him on account of said purchase price thirty-five hundred dollars. Plaintiff then owed John Finnell, Sr., thirty-two thousand dollars evidenced by his notes, and these notes had been transferred by John Finnell, Sr., to the bank, and this indebtedness was assumed solely by John Finnell, Sr. This left ninety-two thousand dollars due on account of the agreed purchase price, and, as the findings sufficiently supported by testimony establish, not in payment for the land, but purely to evidence the amount still owing, John Finnell, Sr., gave to plaintiff his note of October 15, 1890, payable October 15, 1900, said note providing for interest at six per cent per annum, payable annually. The interest was paid annually up to October 15, 1902. No part of the principal sum of ninety-two thousand dollars has ever been paid, and no part of the interest accruing since October 15, 1902. At the time of the transaction plaintiff asked John Finnell, Sr., if he would not give him a mortgage to secure the payment of the note, but John Finnell, Sr., after consultation with Mr. George E. Goodman, president of the bank, and following his advice, refused to do so, and plaintiff never received any security of any kind for the payment of the note. The evidence amply supports the conclusion of the trial court to the effect that the conveyance by plaintiff to John Finnell, Sr., was not made as a part of a family settlement and compromise, but that it was an out-and-out sale, as fully so as one made to a stranger would have been. The evidence shows that plaintiff had concluded to sell this land and communicated his intention to Mr. Goodman and Mr. Noyes, another officer of the bank. The bank and Mr. Goodman were creditors of Finnell, Sr., in large amounts, and Mr. Goodman suggested that plaintiff had better sell to his father and not "to any one else in their way," so he told Goodman and Noyes he would do so if they arranged it, but he would not go to his father himself about the matter. "They went ahead and made the trade," acting as his agents, it may be conceded, for the purpose of effecting a sale. Plaintiff actually paid Noyes a commission of over two thousand dollars for arranging the sale.

There was nothing to compel the conclusion that in thus dealing with his father he was simply surrendering to him something that had been previously given to him by way of a family settlement or advance, in return for the promise of his father that he should receive certain money in lieu thereof.

Unless plaintiff waived his rights in that behalf, he acquired at the time of this sale to his father a vendor's lien on the property so conveyed by him, for so much of the price as remained unpaid and unsecured otherwise than by the personal obligation of the buyer, which lien was valid against every one claiming under the buyer except a purchaser or encumbrancer in good faith and for value. (Civ. Code, secs. 3046, 3048.) Whatever may be said against the policy of allowing such a secret lien, not evidenced by any writing or public record, our legislature has seen fit to look with favor upon it and to continue in force the old equity rules in regard thereto. As was said in *Fisher* v. *Shropshire*, 147 U. S. 133, 143, [13 Sup. Ct. 201], the principle on which such a lien rests has been held to be that one who gets the estate of another ought not in conscience to be allowed to keep it without paying the consideration. Our law, recognizing this as a just principle, gives to every vendor, in the vendor's lien declared by section 3046, security for and a means of enforcing payment of the consideration, so far as it can do so without injury to the rights of *bona fide* purchasers or encumbrancers for value.

The right thus afforded of enforcing payment of the consideration against the property conveyed is a personal one, and it may be waived and relinquished without consideration and without a writing (see *Claiborne* v. *Castle*, 98 Cal. 30, 33, [32 Pac. 807]), and when once waived is gone forever. It is thoroughly settled that if the vendor do any act manifesting an intention on his part not to rely on the lien thus given by law for the payment of the purchase money, such as taking security therefor, without an express agreement that he may still have his vendor's lien, the lien will not exist. (*Fisher* v. *Shropshire*, 147 U. S. 133, 143, [13 Sup. Ct. 201]; *Avery* v. *Clark*, 87 Cal. 619, 625, [22 Am. St. Rep. 272, 25 Pac. 919]; *Lee* v. *Murphy*, 119 Cal. 364, [15 Pac. 549, 955].) But the lien is presumed to exist and is an incident of the transaction of sale in all cases unless the intention of the vendor that it *shall not exist* be clearly manifested by his acts or declarations, and

the burden of proof is on the vendee or his successors to show such intention. (See 2 Jones on Liens, sec. 1064; *Selna* v. *Selna,* 125 Cal. 357, 360, [73 Am. St. Rep. 47, 58 Pac. 16].) The act manifesting such an intention must be one substantially inconsistent with the continued existence of the lien and cannot be inferred from the mere fact that the parties may not have contemplated the assertion of the lien in the first instance. (*Fisher* v. *Shropshire,* 147 U. S. 133, 143, [13 Sup. Ct. 201].)

The trial court found that it is not true that at the time of the conveyance and up to shortly before the commencement of the action, plaintiff relied wholly for the payment of the consideration on the personal responsibility of his father, John Finnell, Sr. This finding is attacked as not being supported by the evidence, but in view of what we have said, we do not regard it as a material finding. The question in this connection is not what were the secret thoughts or expectations of plaintiff as to where he was to get this purchase money, but whether he *had done any act or made any statement that manifested his intention to abandon any right given him by law* to enforce his claim against the land, and to look solely to his father personally for payment, in other words, had he done or said anything that was inconsistent with the retention of a lien and amounted to a waiver thereof. As was said in *Moshier* v. *Meek,* 80 Ill. 79, speaking of such a lien, "this lien, in equity, is created without the express agreement of the parties, *and even when they do not know that such a lien exists or is created by operation of law.* In *Houston* v. *Dickson,* 66 Tex. 79, [1 S. W. 375], the court, after saying that the lien may be waived by such facts as show that the vendor relies on other security, or relinquishes his right to the security which the law gives him, said: "But the absence of knowledge that the law gives him such a security, or a mere secret intention not to claim it, does not affect the right." (See, also, 2 Jones on Liens, sec. 1064.)

It was further found, substantially, that it is not true that at the time of the conveyance, it was understood and agreed that no lien existed or was reserved, and it is not true that plaintiff ever waived all liens against said land or any part thereof. If this finding, which is attacked by appellant, is sufficiently supported by evidence, it effectually disposes of all claims to the effect either that a vendor's lien never existed in favor of plaintiff, or that there had been a waiver of any

right to a lien. We are satisfied that it cannot be held here that the finding is not sufficiently sustained by the evidence. Admittedly, there was nothing to indicate any express agreement of the parties, written or parol, relative to the matter, and appellant is compelled to rely upon the circumstances of the transaction as showing an agreement or understanding that no vendor's lien should exist, and that all right to such a lien should be waived. As we have already said, the trial court was fully justified in finding that the transaction of October 15, 1890, between plaintiff and his father was not one in the nature of a family settlement and compromise, and also that the note was not taken as a *substitute* for the purchase money, so that whatever force might properly be given to such a circumstance, if found, is a matter of no concern here. It is claimed that the evidence shows that plaintiff knew that his father intended to mortgage the land to the James H. Goodman & Co. Bank in order to take up plaintiff's notes to him which he had transferred to such bank, which mortgage was in fact executed by the father about six months afterward, and that this knowledge put him on notice that the intended use of the property by the father was such as was absolutely inconsistent with the creation of a vendor's lien on the property. Plaintiff had no actual knowledge of his father's intention to mortgage this land, but it is claimed that the knowledge of Mr. Goodman and Mr. Noyes in this behalf must be imputed to him by reason of the fact that they were his agents. We do not consider this claim well based under the circumstances. They were his agents for a very limited purpose, simply that of inducing Mr. Finnell to purchase the land from his son, and they appear to have been interested in accomplishing this, not alone on account of plaintiff, but principally on account of the bank, whose agents they also were, so that this property should not go into the hands of a stranger, but should be, with the other portions of the rancho, a part of the property of Finnell, Sr., with whom the dealings of the bank were very extensive and involved very large sums of money. The understanding between them and Finnell, Sr., "that the land should be holden for the amount of money that he (plaintiff) owed," evidenced by the mortgage subsequently given, was one urged and assented to by them solely as agents of the bank, and had no connection whatever with the subject-matter of their agency

for plaintiff. The matter of obtaining the necessary ·funds wherewith to make the purchase from plaintiff was a transaction wholly between the purchaser and the bank, with which plaintiff had nothing whatever to do. We are satisfied that the knowledge of Goodman and Noyes as to the means by which the indebtedness due the bank from the purchaser was to be secured cannot be held to indicate any assent on the part of plaintiff to a waiver of any of his rights in the matter of the enforcement of his claim for the balance of the purchase money. The fact that plaintiff asked his father to give a mortgage as security for the balance of the purchase money and that his father declined to do so certainly does not show any disposition on plaintiff's part to waive any security given him by the law. It shows, to the contrary, that he did desire to obtain, if possible, a written contract of security, and the utmost shown by his subsequent willingness to convey without obtaining this, is that he withdrew his demand for such a contract, not that he waived anything given him by the law.

The appellant Finnell Land Company acquired the property from John Finnell, Sr., by a deed dated May 29, 1900, and has ever since been the owner thereof. The trial court found that it purchased the land and took the deed therefor "with the full knowledge that the said John Finnell, deceased, had not paid plaintiff the residue of·said purchase money."

The Finnell Land Company was organized as a corporation under the laws of this state on May 24, 1900, with a capital stock of six hundred and fifty thousand dollars, divided into sixty-five hundred shares of the par value of one hundred dollars each. The evidence quite clearly establishes that it was formed at the instance of Mr. Goodman and the other officers of the J. H. Goodman & Co. Bank, to which Finnell, Sr., owed very large amounts of money, aggregating several hundred thousand dollars, to enable him and them to more readily control the real property of Mr. Finnell, of which the land involved here constituted a part, with a view to its sale and the settlement of the claims of the bank and Goodman. The original directors were John Finnell, who was president of the corporation, and four of his sons, not including the plaintiff. On May 29, 1900, Finnell, Sr., proposed in writing to the directors to convey to the company, free of encumbrance, all of his land, being about 15,841 acres, in consideration of the issuance of

all of the stock, sixty-five hundred shares, as follows: To John Finnell, Jr., ten shares; to James Finnell, ten shares; to Simpson Finnell, ten shares; to Bush Finnell, ten shares; to George E. Goodman, two thousand shares, and to John Finnell, Sr., 4,460 shares. This offer was accepted by the directors, and the deed was thereupon delivered and the stock issued. It is found, in accord with an allegation of appellant's answer, that "all of said persons to whom the said shares were issued other than John Finnell, were nominal owners thereof, but the beneficial and equitable owner, and the only person having any interest in said shares, was the said John Finnell, who owned the entire capital stock of said corporation, to wit: sixty-five hundred (6,500) shares, from May 29, 1900, until October 26, 1900, when he transferred said sixty-five hundred (6,500) shares as hereinafter found." The transfers of October 26, 1900, here referred to, were specifically described in subsequent findings, being one of forty-five hundred shares, together with certain personal property, to the James H. Goodman & Co. Bank in satisfaction of an indebtedness of $447,742.80 due said bank from him, and one of two thousand shares and certain personal property to said George E. Goodman in satisfaction of an indebtedness of over three hundred and fifty thousand dollars. On September 8, 1902, said George E. Goodman transferred his two thousand shares to Simpson Finnell, a brother of plaintiff, who has ever since been the owner thereof, and the Goodman Bank still owns the other forty-five hundred shares. The evidence shows that each of the directors of appellant other than John Finnell, Sr., including said Simpson Finnell, knew, at the time of the transaction by which it acquired the land, that plaintiff had not been paid the balance of the purchase price, and that he held the note of John Finnell, Sr., therefor. The evidence further shows that both George E. Goodman, individually, and the James H. Goodman & Co. Bank, through its president and other officers, had the same knowledge through all the proceedings in relation to the formation of the corporation and the transaction by which this property was conveyed to appellant, and ever since. Under these circumstances we do not see how it can be doubted that the Finnell Land Company took the land from Finnell, Sr., with full knowledge that John Finnell, Sr., had not paid the plaintiff the residue of the purchase

money. It is obvious that if at the time of the conveyance the corporation was practically simply John Finnell, Sr., as the finding in regard to the ownership of the stock establishes, and that no other person had any interest in the property of the corporation, it necessarily had all the knowledge in regard to the right of plaintiff that Finnell had. This was recognized in *Bang* v. *Brett*, 62 Minn. 4, [63 N. W. 1067], cited by appellant, the court saying: "Or, if the members of the corporation consisted wholly of the Merritts and others having notice of the existence of plaintiff's lien, it might be that their notice would be notice to the corporation." But it is unnecessary to cite authorities to sustain this proposition. John Finnell, Sr., with the aid of dummy directors and stockholders, incorporated himself, and conveyed the land to himself so incorporated. If by reason of the fact that it was then understood by him, Goodman, and the Goodman Bank, that the stock was subsequently to be transferred to Goodman and the Goodman Bank in satisfaction of his indebtedness, Goodman and the Goodman Bank could be held to have then had any interest in the corporation, the latter, as has been said, had the same knowledge in regard to plaintiff's claim as had Finnell. Although under these circumstances it was not essential to notice to the corporation that the dummy directors of appellant should have had knowledge, they nevertheless did have it. We know of no theory upon which it may be held that the Finnell Land Company, constituted as it was, did not take with notice of plaintiff's right.

The trial court found against appellant's claim that plaintiff had been guilty of laches in failing to assert his lien and bring an action to enforce the same prior to October 14, 1904, the date of the commencement of this action. We cannot hold that this finding is not sufficiently sustained by the evidence. The right of a vendor to enforce his lien continues, unless waived, so long as an action can be commenced for the purchase money (2 Jones on Liens, sec. 1064), and where a note for the purchase money is given, payable at a future day, an action to enforce the lien may be commenced at any time before the lapse of the period within which an action can be brought on the note. (*California Savings Bank* v. *Parris*, 116 Cal. 254, 259, [48 Pac. 73].) This action was commenced within that period. "Where an express statute of limitations

applies to a suit in equity, *mere delay* to commence the suit for a period less than that of the statute of limitations is never .a reason for dismissing the proceeding." (*Lux* v. *Haggin,* 69 Cal. 267, [10 Pac. 676].) "There must appear, in addition to mere lapse of time, some circumstances from which the defendant or some other person may be prejudiced, or there must be such lapse of time that it may be reasonably supposed that such prejudice will occur if the remedy is allowed." (*Cahill* v. *Superior Court,* 145 Cal. 42, 47, [78 Pac. 467, 469].) In this case it was affirmatively made to appear that there could have been no prejudice resulting to any person by reason of the failure of plaintiff to commence his proceeding to enforce the lien until the period prescribed by the statute of limitations was about to expire. It may be assumed purely for the purposes of this decision that as against a corporation whose stock is transferable in the open market and likely to pass into the hands of innocent purchasers, a person having a mere vendor's lien against property held by the corporation must assert his claim properly, and that any unreasonable delay in asserting it will foreclose his right if stock of the corporation has been transferred to purchasers in good faith and without notice. But no such condition confronts us here. All those who have acquired the stock of Finnell, Sr., had full knowledge of the facts under which plaintiff's right to a lien exists.

It is claimed that the trial court erred in several rulings on the admissibility of evidence.

The alleged error principally relied on was the exclusion by the court of certain evidence attempted to be elicited from plaintiff relative to a conversation between him and his brother, Bush Finnell, in July or August, 1904, which was two or three months before the commencement of this action. The proposed evidence was contained in the deposition of plaintiff, which had been taken for the purposes of the trial, and, so far as necessary to be stated here, is as follows: —

"Q. Now what was it precisely that your brother Bush told you at that time?

"A. Well, Bush and I were talking, and I told Bush it looked to me like everything was getting muddled up, and if we did not get it settled up pretty soon there would be nothing left, and I told Bush about this note. In fact, I guess he knew

it; I think all the Finnell family knew it, notwithstanding I
never said anything to them about it. I asked Bush if there
was any way for me to make myself whole or part whole. He
said he knew no other way except I might bring a vendor's
lien against the land, and that was about all there was said.

"Q. Up to that time did you know there was such a thing
as a vendor's lien?

"A. No sir, knew nothing about it.

"Q. That was new to you?

"A. That was a new trick to me; I did not know it."

The sum and substance of this was that plaintiff did not
know that there was such a thing as a vendor's lien at the
time of the conveyance to his father or until shortly before
the commencement of this proceeding. We have already seen
that the mere fact that a vendor does not know that the law
gives him such security cannot affect his right. But it is
urged that the proposed evidence was "very material addi-
tional evidence upon the question of the intent of Williamson
Finnell in taking the ninety-two thousand dollar note from
his father, to the effect that he *relied entirely* upon the finan-
cial responsibility of his father as security for it, and that the
reconveyance *was in fact a family settlement and compromise,"*
and that it went to show that no vendor's lien was ever created.
To our minds, this evidence was in no way material on the
question of family settlement and compromise. We have al-
ready stated our views to the effect that it was not material
what were the secret thoughts or expectations of plaintiff as to
how he could or would collect this purchase money, or whether
he believed that he could collect it only from his father person-
ally, and so, in his own mind, relied entirely on his father's
financial responsibility. The *law*, not any contract of the par-
ties, gave him the lien if the transfer of the land to his father
was an ordinary sale, and we do not think that the proposed
evidence as to his ignorance of the law relative to a vendor's
lien was such as to throw any light upon the question whether
it was a sale, or upon the question whether he did or said
anything which might tend to show an understanding between
the parties for a waiver of any right given him by the law.
We cannot see that this evidence could have affected in any
degree, the conclusion of the trial court upon any material
issue.

It is urged that it was error for the court to exclude the testimony showing how plaintiff became indebted to his father for the thirty-two thousand dollars which he claimed to owe him at the time of his conveyance on October 15, 1890. As to this claim it is sufficient to say that we are unable to find that the trial court excluded any evidence that would have had · any material bearing upon this question.

Mr. F. E. Johnston, an attorney, was allowed, over the objection of appellant "that it is a privileged communication" under subdivision 2 of section 1881 of the Code of Civil Procedure to testify that at a conversation that occurred between himself and Finnell, Sr., and Mr. Goodman at the Palace Hotel in San Francisco, shortly prior to the formation of the Finnell Land Company, in which the matter of forming a corporation was "simply mentioned by one or the other," he was asked whether it could be done, and he said it could be done. He further said that he was not anybody's attorney in the matter. It is clear that the objection made to this evidence was properly overruled.

The evidence showing knowledge on the part of the officers of the James H. Goodman & Co. Bank of the facts giving plaintiff a right to enforce against the land his claim for the residue of the purchase money was admissible, if for no other reason, for the purpose of showing that no prejudice could have resulted from the delay of plaintiff in commencing his proceeding to enforce his lien, and thus meeting the defense of laches.

In view of our conclusion upon the matters already discussed, there is no other point suggested in the briefs that requires attention.

Those portions of the judgment that are appealed from, and the order denying a new trial, are affirmed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, ˙ J., concurred.