**MURDOCK–SC ASSOCIATES, a partnership, Plaintiff,**

v.

**BEVERLY HILLS FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation, et al., Defendants.**

**No. CV 85–3908 RG(Bx).**

United States District Court, C.D. California.

Dec. 20, 1985.

---

A. James Roberts, III, C. Stephen Howard, Bonnie S. Klapper, of Tuttle & Taylor Inc., Los Angeles, Cal., for defendant Fed. Sav. and Loan Ins. Corp., as Receiver for Beverly Hills Sav. and Loan Ass'n; William K. Black, Paul W. Grace, Anne Buxton Sobol, Federal Home Loan Bank Bd., Office of Gen. Counsel, Washington, D.C., of counsel.

Henry J. Silberberg, Marlene A. Pontrelli, Stroock & Stroock & Lavan, Los Angeles, Cal., for defendant Beverly Hills Sav., a Federal Sav. and Loan Ass'n.

Richard B. Cutler, Robert A. Philipson, of Cutler and Cutler, a Professional Law Corp., Los Angeles, Cal., for plaintiff Murdock-SC Associates.

## ORDER

GADBOIS, District Judge.

In April, 1984 the plaintiff, Murdock-SC Associates ("Murdock"), a California partnership, sold an office building for approximately $36,000,000 to Beverly Hills Savings and Loan Association ("Old BHS"), a California-chartered, federally insured savings and loan association. As part of the purchase price for the building Old BHS delivered to Murdock an unsecured, subordinated promissory note (the "promissory note" or the "note") for the sum of approximately $3,600,000, plus interest. The promissory note provided in part:

> The payment of principal of interest on this Subordinated Note is hereby expressly subordinated in right of payment on liquidation to the extent and in the manner hereinafter set forth to the prior payment in full of all claims (including post-default interest) against [Old BHS] having the same priority as savings account holders or any higher priority including, without limitation, obligations to any Federal Home Loan Bank, indebtedness to commercial banks not expressed to be subordinated to any other obligations of [Old BHS], obligations in respect of loans in process and advance payments made by borrowers from the association for taxes and insurance and obligations in respect of funds held in a trust relationship, whether outstanding on the date of the original issue of this Subordinated Note or incurred after such date. The indebtedness, obligations, claims and liabilities to which this Subordinated Note is subordinated are hereinafter sometimes referred to as the "Senior Liabilities."

(The Note, at 1–2.) The note further provides that in the event of any receivership, insolvency, or bankruptcy proceedings of Old BHS the Senior Liabilities shall be preferred in payment over the note and such

Senior Liabilities shall first be paid and satisfied in full before any payment of any kind shall be made on either the principal or interest on the note. *Id.* Finally, the note states that it is not secured by the assets of Old BHS and is not eligible as collateral for any loan of Old BHS. *Id.*

On April 23, 1985 the Federal Home Loan Bank Board ("FHLBB") found that Old BHS was insolvent. Consequently, pursuant to its authority under 12 U.S.C. § 1729(c)(1)(B), the FHLBB appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver of Old BHS. Pursuant to 12 U.S.C. §§ 1729(c)(1)(B), (c)(3), and (d), the FHLBB accorded the FSLIC all powers, rights, and privileges of a receiver specified by statute and regulation, including but not limited to those set forth in 12 U.S.C. § 1464(d), 12 U.S.C. § 1729 and 12 C.F.R. §§ 547, 549. On that same date, April 23, 1985, the FHLBB, pursuant to 12 U.S.C. §§ 1729(a), (b)(1)(A)(iv) authorized the FSLIC as receiver to organize a new federal savings and loan association in order to facilitate the liquidation of Old BHS. On that date the FSLIC organized a new, federally-chartered savings and loan association under the name Beverly Hills Federal Savings and Loan Association ("New BHS"). The FSLIC as receiver sold almost all of the assets of Old BHS to New BHS pursuant to an acquisition agreement between the FSLIC as receiver and New BHS. The acquisition agreement provides, *inter alia,* that the liabilities of Old BHS assumed by New BHS "do ... not mean or refer to any obligation ... to a holder of subordinated debt issued by [Old BHS]."

Also on that date the FSLIC in its corporate capacity assumed from the FSLIC in its receiver capacity for Old BHS certain assets and liabilities of the receiver pursuant to a receiver's agreement between the FSLIC as receiver and the FSLIC in its corporate capacity. The receiver's agreement provides in part:

The CORPORATION [the FSLIC in its corporate capacity] hereby assumes and undertakes to pay and discharge those liabilities of the RECEIVER not assumed by the ACQUIRING ASSOCIATION [New BHS], except that the CORPORATION specifically does not assume or agree to discharge, and by virtue of this Agreement does not assume or agree to discharge ... any obligation of [Old BHS] to holders of subordinated debt issued by [Old BHS]....

The combined effect of the acquisition and receiver's agreements is that Old BHS's liabilities to subordinated debt holders passed neither to New BHS nor to the FSLIC in its corporate capacity but remained with the FSLIC in its receiver capacity.

Murdock originally brought this action in the Superior Court of the State of California for the County of Los Angeles against New BHS and Old BHS alleging that Old BHS defaulted under the terms of the note by, *inter alia,* failing to meet the net worth and federal insurance reserve requirements set forth in the note. The only cause of action alleged by Murdock in its original complaint filed in state court was one to foreclose a vendor's lien against the real property in question—the office building—pursuant to California Civil Code section 3046. Murdock thereafter filed a notice of lis pendens with the Office of the Los Angeles County Recorder pursuant California Civil Procedure Code section 409(a).

On or about June 13, 1985 the FSLIC, as receiver for Old BHS, removed this action to federal court pursuant to 12 U.S.C. section 1730(k)(1), which provides that the FSLIC in its corporate capacity may remove any action to which it is a party from state court to the United States district court for the district embracing the locale where the state court action is pending. Murdock subsequently amended its complaint to include a claim for declaratory relief.

Presently before this court are the FSLIC's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), and its motion pursuant to California Civil Procedure Code section 409.1, to expunge the notice of lis pendens

on file with the Los Angeles County Recorder.

■ The first argument put forth by the FSLIC in support of its motion to dismiss is that Murdock's only remedy is to file a claim with the receiver and, if dissatisfied, to appeal to·the FHLBB. This argument is persuasive and supports dismissal of this action.

12 U.S.C. section 1729(c)(1)(B), provides that notwithstanding any provision of any state constitution or statute, if a state-chartered, federally insured savings and loan association goes bankrupt "the [FHLBB] shall have exclusive power and jurisdiction to appoint the Corporation [the FSLIC] as sole conservator or receiver of such institution." *Id.* Congress has given the FSLIC as receiver complete authority—subject to review by the FHLBB—to adjudicate claims and to allocate the assets and liabilities of a failed association in connection with its liquidation. 12 U.S.C. section 1729(d), provides in pertinent part:

> In connection with the liquidation of insured institutions, the Corporation [the FSLIC] shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board....

*Id.* More particularly, in 12 U.S.C. § 1729-(c)(1)(B)(i)(II), (b)(1)(A)(iv)-(vi), (a), Congress has further authorized the FSLIC as receiver to organize a new federal association and to transfer to the new federal association any or all of the assets and liabilities of the old association.

Under FHLBB regulations governing liquidation of a failed association by a receiver, 12 C.F.R. § 549, a creditor of such an association in due course may present a claim to the receiver. *Id.* § 549.4(a). Under section 1729(d) and 12 C.F.R. § 549.-4(b), the creditor may appeal the receiver's decision on its claim to the FHLBB. FSLIC argues simply that under these federal statutes and regulations Murdock's only remedy is to file a claim with the receiver of Old BHS, i.e., the FSLIC in its receivership capacity and, if dissatisfied, to appeal the receiver's decision to the FHLBB.

The second FSLIC argument in support of its motion to dismiss is that federal law prohibits any court from taking any action that affects the functions of a receiver, and that permitting Murdock to foreclose his vendor's lien on the property in question would constitute such action. The argument is sound.

12 U.S.C. section 1464(d)(6)(C) provides: "Except as otherwise provided in this subsection, no court may ..., except at the instance of the [FHLBB], restrain or affect the exercise of powers or functions of a conservator or receiver [of a failed savings and loan association]." *Id.*

The FSLIC argues that section 1464(d)(6)(C) requires this court to dismiss this action because any attempt to foreclose its vendor's lien against the property in question would necessarily restrain or affect the exercise of the powers or functions of the receiver of Old BHS, the FSLIC *qua* receiver. In support of this argument the FSLIC relies on the scant case law interpreting this statute. Neither the Supreme Court nor the Ninth Circuit has interpreted section 1464(d)(6)(C). The only Court of Appeals decision interpreting this statute is *North Mississippi Savings & Loan Association v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985). The plaintiff in that case, Hudspeth, a former president of North Mississippi Savings & Loan Association ("Old North"), was removed as president of Old North but continued to receive monthly payments from Old North pursuant to a deferred compensation agreement. In 1982 Old North filed an action in Mississippi state court for a declaration that its agreement with Hudspeth either did not exist or was terminable. Hudspeth counterclaimed for specific performance or damages for breach of contract. In April, 1983 the state of Mississippi put Old North into state receivership and appointed the FSLIC

as state receiver. On that same day the FHLBB determined that Old North was insolvent and "federalized" the receivership by naming the FSLIC as the sole receiver under 12 U.S.C. section 1729(c)(1)(B). The FSLIC then formed a new federally-chartered institution, New North Mississippi Federal Savings and Loan Association ("New North"), and appointed a federal conservator to run New North. Old North transferred to New North essentially all of its assets and all liabilities except Old North's liabilities to its stockholders and any obligation owed by Old North under compensation agreements such as Hudspeth's. The FSLIC, as receiver for Old North, then terminated all such agreements and stopped the payments to Hudspeth. The FSLIC, on behalf of Old North, unsuccessfully moved in state court to dismiss the counterclaim. Hudspeth then filed an amended counterclaim joining New North as a party, alleging that New North was a transferee in interest under Mississippi law, and seeking actual and punitive damages from Old North and New North. The FSLIC and New North removed the action to federal court and moved to dismiss Hudspeth's counterclaim. Hudspeth moved to remand to state court. The district court denied the motion to remand and granted the motion to dismiss the counterclaim. On appeal the United States Court of Appeals for the Fifth Circuit affirmed.

The Fifth Circuit first held that the case had properly been removed to federal court pursuant to 12 U.S.C. section 1730(k)(1). The appellate panel then considered whether the district court properly had dismissed the case under 12 U.S.C. sections 1464(d)(6)(C) and 1729(d). In discussing Congress' motives in enacting section 1464(d)(6)(C), the Fifth Circuit stated: "Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities." *Hudspeth*, 756 F.2d at 1101. The court went on to note that:

[E]ven the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets: the FSLIC would not be able to determine how much to pay other claimants until the termination of the parallel litigation. Given the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver, such a delay is a "restraint" within the scope of the statute.

*Id.* at 1102.

The FSLIC relies on *Hudspeth* in support of its argument that this action should be dismissed under section 1464(d)(6)(C). The FSLIC, however, does not discuss why *Hudspeth* is applicable to the case at hand but merely recites the facts of that case and concludes that the case at hand is similar and should be treated in the same manner.

The FSLIC also cites a number of district court cases in support of its argument that section 1464(d)(6)(C) requires dismissal of this action. The FSLIC does not discuss these cases but merely summarizes their holdings parenthetically. The most relevant of these cases are: *Gibraltar Building and Loan Association, Inc. v. State Savings and Loan Association*, 607 F.Supp. 722, 723 (N.D.Cal.1985) (holding that 12 U.S.C. §§ 1464(d)(6)(C) and 1730(k)(1) preclude a court from entering a protective order or from issuing a writ of attachment against the FSLIC in its capacity as a receiver of a failed savings and loan association on income derived from various holdings of the failed savings and loan association); and *First Savings & Loan Association v. First Federal Savings & Loan Association*, 531 F.Supp. 251, 253 (D.Hawaii 1981) (holding that section 1464(d)(6)(C) precludes a court from issuing an injunction ordering the purchaser of the assets of a failed savings and loan association to restore those assets to the receiver of the failed institution). These cases conclude the FSLIC's argument on this point.

Murdock does not respond to the FSLIC's two arguments separately but treats them as one argument. Murdock's

opposition to the FSLIC's motion to dismiss concentrates on the FSLIC's second argument, i.e., that section 1464(d)(6)(C) requires this court to dismiss this action because any attempt to foreclose the vendor's lien on the property in question would necessarily interfere with the powers and functions of Old BHS's receiver.

It argues that foreclosure of its vendor's lien on the property would in no way restrain or affect the exercise of powers or functions of the receiver. Murdock argues that it is not asserting a claim against either Old BHS or New BHS on the contractual obligation represented by the note and does not challenge the receiver's allocation of the assets and liabilities of Old BHS. In fact, Murdock concedes that it has no recourse against New BHS on the note because the FSLIC did not transfer Old BHS's liability on the note to New BHS. Murdock contends that the crucial point is that its suit to foreclose its vendor's lien against the property is not the equivalent of a suit against New BHS on the note, would not obligate New BHS to make the payments called for by the note, and thus would not affect the receiver's allocation of Old BHS's liabilities.

In support of its argument Murdock cites but does not discuss California Civil Code section 2890, which states: "The creation of a lien does not of itself imply that any person is bound to perform the act for which the lien is a security." *Id.*

Murdock argues also that the situation in the case at hand is analogous to one in which property subject to a mortgage or deed of trust to secure a payment obligation is conveyed by the debtor to a third party. Relying on *Snidow v. Hill*, 87 Cal. App.2d 803, 807, 197 P.2d 801, 803 (1948) ("A mere grant of the property subject to a mortgage debt is not sufficient to impose any personal liability on the grantee to pay the debt or perform any of the obligations thereof."), Murdock contends that in such a situation the creditor does not have a cause of action against the third party to enforce the debtor's payment obligation because the third party is not a party to the contract.

Murdock argues, however, that the creditor—and by analogy, itself in the case at hand—*does* have a cause of action against the third party to foreclose his mortgage or deed of trust on the property in the hands of the third party, and this cause of action exists regardless of the fact that the third party has no contractual obligation whatsoever to the creditor. In support of this position Murdock cites *Ward v. De Oca*, 120 Cal. 102, 105, 52 P. 130, 131 (1898) (holding implicitly that a mortgagee may foreclose on property conveyed by the mortgagor to a third party grantee even though the third party grantee is not liable on the promissory note secured by the mortgage).

In addition, Murdock attempts to distinguish the Fifth Circuit's decision in *Hudspeth* from the case at hand. It argues that the plaintiff in *Hudspeth*, Hudspeth himself, was attempting to proceed against New North on the claimed contractual agreement itself while in the case at hand Murdock is not suing New BHS on the note but is suing to foreclose its vendor's lien on the property in question. Apparently Murdock argues that although section 1464(d)(6)(C) may bar the sort of claim asserted by the plaintiff in *Hudspeth*, it does not preclude its claim in the case at hand.

The foregoing arguments attack the FSLIC's second argument, i.e., that section 1464(d)(6)(C) bars Murdock's claim to foreclose its vendor's lien against the property in question because such a lien would restrain or affect the powers or functions of Old BHS's receiver, the FSLIC in its receivership capacity. Murdock does proffer one argument in opposition to the FSLIC's first argument, i.e., that Murdock's sole remedy is to file a claim with the FSLIC as Old BHS's receiver and, if dissatisfied, to appeal to the FHLBB.

Murdock maintains that if the court dismisses this action and orders its notice of lis pendens expunged New BHS will sell the property in question to a third party. Murdock contends that since a party that

purchases land in good faith and for value takes the property free of any liens of the type in issue here, Cal.Civ.Code § 3048 its rights will be extinguished upon the sale of the property without an adjudication on the merits of its claim either by this court or Old BHS's receiver and the FHLBB. Furthermore, Murdock argues that since the FHLBB cannot adjudicate its rights to a vendor's lien it will be deprived of a forum in which to establish this lien. Thus, Murdock concludes that its administrative remedies before Old BHS's receiver and the FHLBB are inadequate and thus need not be exhausted before it can pursue this action. *NLRB v. Industrial Union of Marine & Shipbuilding Workers of America,* 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706 ("The requirement of exhaustion [of administrative remedies] is a matter within the sound discretion of the courts.... Exhaustion is not required when the administrative remedies are inadequate."); *see Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974) (exhaustion of administrative remedies not required if irreparable injury will result unless immediate judicial review is permitted).

Finally, Murdock puts forth two other arguments in opposition to the FSLIC's motion to dismiss and its motion to expunge the notice of lis pendens. First, it argues that there was a complex sale and lease-back arrangement between the parties with respect to the property in question before Murdock sold the property to Old BHS. Murdock contends rather conclusively that the complexity of this arrangement, as well as the fact that its administrative remedies are inadequate, requires this court to deny both of the FSLIC's motions on the merits. Second, with respect to the FSLIC's motion to dismiss only, Murdock argues that this motion is moot because it attacks the original complaint filed in this action and that complaint has been superseded by the first amended complaint.

Both of FSLIC's arguments support dismissal. As discussed earlier, section 1464(d)(6)(C) precludes the court from re-straining or affecting the exercise of powers or functions of a receiver of a failed savings and loan association. Thus, this statute prevents the court from taking any action that restrains or affects the FSLIC's powers or functions as the receiver of Old BHS. This brings us to the heart of the controversy between the FSLIC and Murdock: whether foreclosure of Murdock's vendor's lien on the property in question would restrain or affect the FSLIC's powers or functions as the receiver of Old BHS. This is an issue of first impression, and this court holds that a foreclosure would restrain or affect the FSLIC's powers or functions in this capacity.

It should first be noted that section 1464(d)(6)(C) is a broadly worded statute. It prohibits courts from not only restraining but *affecting* not only the powers but also the mere *functions* of receivers of failed savings and loan associations. In employing such language Congress undoubtedly meant to prohibit any court from taking any action that might affect the functions of such receivers. As the *Hudspeth* court noted: "Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities." *Hudspeth,* 756 F.2d at 1101.

The foreclosure by Murdock of its vendor's lien would affect the functions of the FSLIC in its capacity as the receiver of Old BHS. If it were allowed to foreclose its vendor's lien on the property in question the approximately $3,600,000 debt evidenced by the promissory note would be extinguished. This would deprive the FSLIC of a bargaining chip in its attempt to allocate the assets and liabilities of Old BHS. For example, it would deprive the FSLIC of the possibility of exchanging its obligation under this note, which is due in April, 1991, for a smaller obligation due before that date.

More importantly, during the foreclosure proceedings, and until the property was executed upon, the purchase price ascertained, and the property actually sold, the FSLIC would not know whether or not to make the interest payments on the note to its holder, Murdock. This would disrupt and delay the receivership function and is unacceptable by reason of section 1464(d)(6)(C). As the *Hudspeth* court stated:

> [E]ven the facial merits of claims outside the statutory reorganization process would delay the receivership function of distribution of assets: the FSLIC would not be able to determine how much to pay other claimants until the termination of the parallel litigation. Given the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver, such a delay is a "restraint" within the scope of the statute.

*Hudspeth,* 756 F.2d at 1102.

Murdock's contentions in opposition are unpersuasive. The basis of Murdock's argument is that this action to foreclose its vendor's lien will not affect the functions of the FSLIC in its capacity as Old BHS's receiver because it is not an action on the note and it will not require any party to make payments on the note. That, however, is not the issue. The question is whether the action will in any way affect the functions of the FSLIC in its capacity as receiver. As the discussion above makes clear, this question must be answered affirmatively.

For the same reason, Murdock's reliance on California Civil Code section 2890 is misplaced. As noted, that statute provides that the creation of a lien does not of itself imply that any person is bound to perform the act for which the lien is a security. Merely because foreclosure will not obligate any party to make payments on the note does not mean that the lien does not affect the FSLIC's receivership functions. Murdock's argument that under California law it may foreclose its vendor's lien on the property in question despite the fact that New BHS is not liable on the note is equally unpersuasive. Again, the existence of this cause of action does not change the fact of effect on the functions of the receiver.

FSLIC is correct in arguing that Murdock's action to foreclose its vendor's lien on the property in question is barred by section 1464(d)(6)(C) because it affects the functions of the FSLIC in its capacity as Old BHS's receiver.

The FSLIC's second argument in support of its motion to dismiss, that Murdock's sole remedy is to file a claim with the FSLIC in its capacity as Old BHS's receiver and, if dissatisfied, to appeal to the FHLBB, also justifies dismissal of this action. The federal statutes and regulations discussed above make clear that the FHLBB has the exclusive power to make the FSLIC the *sole* receiver of a failed savings and loan association. 12 U.S.C. § 1729(c)(1)(B). This is exactly what happened in the case at hand. Furthermore, as noted earlier, these provisions make clear that Congress has given the FSLIC as receiver complete authority—subject only to review by the FHLBB—to adjudicate all claims against a failed association, to allocate the assets and liabilities of such an association, "and to do all other things that may be necessary in connection" with the liquidation of the association. 12 U.S.C. § 1729(d). FHLBB regulations provide that creditors of failed savings and loan associations may present their claims to the receiver of that association and if they are dissatisfied with his disposition of their claim they may appeal to the FHLBB. 12 C.F.R. § 549. These statutes and regulations—when viewed in conjunction with section 1464(d)(6)(C)—evidence Congress' intention that they should serve as the sole remedy for creditors of failed savings and loans associations. As the *Hudspeth* noted:

> This administrative process serves to hasten the resolution of the receivership proceedings, in keeping with the Congressional purpose. Furthermore, the regulations reflect the view of the FHLBB, the enforcing agency for the

**956**

relevant banking statutes, that the FSLIC is empowered to decide claims as part of its receivership function. The FHLBB's opinion is entitled to our deference. *Mattox v. FTC,* 752 F.2d 116, 123–24 (5th Cir.1985). . . .

*Hudspeth,* 756 F.2d at 1102–03.

Murdock's argument that this action should go ahead because these administrative remedies are inadequate is unpersuasive. Murdock contends that it will suffer irreparable harm if this court *both* dismisses this action *and* expunges the notice of lis pendens because New BHS savings intends to sell the property in question to a good faith purchaser for value who will take the property free and clear of any vendor's liens. Furthermore, Murdock argues that since the FHLBB cannot adjudicate its rights to the vendor's lien it will be deprived of a forum in which to establish this lien. The solution is two-fold: first, the court will deny the motion to expunge the notice of lis pendens, and a third party purchaser will take title to the property with notice of and subject to the vendor's lien; and second, it must be remembered that Murdock has an interest in the property only to the extent that it seeks to satisfy its unsecured debt for approximately $3,600,000 that is evidenced by the note. It will not suffer irreparable injury if the property is sold because it can pursue its claim through the administrative mechanism discussed above. In short, the same is adequate to protect Murdock's interest.

Murdock's final two arguments in opposition to the FSLIC's motion to dismiss—also directed to the motion to expunge—are meritless. It suffices to say that the complexity of Murdock's pre-sale financing and sale and lease-back arrangement with Old BHS is not grounds for denying the FSLIC's motion to dismiss. Finally, the FSLIC's motions are not moot because the grounds upon which these motions are made are applicable to the first amended complaint as well as the original complaint and Murdock had proper notice of the pendency of these motions.

■ The second motion made by the FSLIC is a motion to expunge the notice of lis pendens. For the reasons discussed below, this motion is denied.

FSLIC argues that the notice of lis pendens should be expunged for three different reasons. First, if this court grants the FSLIC's motion to dismiss this action there will be no pending action concerning the property in question within the meaning of California's lis pendens statute. This argument is rejected.

California's primary lis pendens statute, California Civil Procedure Code section 409, states in pertinent part:

In an action concerning real property or affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and the defendant, at the time of filing his answer, when affirmative relief is claimed in such answer, or at any time afterwards, may record in the office of the recorder of the countty in which the property is situated, a notice of the pendency of the action, containing the names of the parties, and the object of the action or defense, and a description of the property in that county affected thereby. This section authorizes a notice of an action concerning real property pending in any United States district court to be recorded and indexed in the same manner and in the same place as herein provided with respect to notices of action pending in courts of this State.

*Id.*

California's expungement provision, California Civil Procedure Code section 409.1, provides in pertinent part:

At any time after notice of pendency of an action has been recorded pursuant to Section 409 or other law, the court in which the action is pending shall, upon motion of a party to the action supported by affidavit, order that the notice be expunged, unless the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence, that:

(a) The action does affect title to or right of possession of the real property described in the notice; and

(b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith.

*Id.* California Civil Procedure Code section 409.2, provides that a court may order that a notice be expunged if the moving party posts an undertaking sufficient to satisfy any damages that the party who recorded the notice may incur if the notice is expunged and the moving party does not ultimately prevail in the action concerning the property.

Under California law a notice of lis pendens is not automatically extinguished upon the entry of final judgment of the action concerning the property but remains on the record while that action is being appealed, subject to expungement under section 409.1 and 409.2. As the California Supreme Court has stated: "[W]e hold that the lis pendens may remain on record while the appeal is pending, subject to the statutory right of the adversely affected party to seek expungement under sections 409.1 and 409.2." *Peery v. Superior Court of Santa Clara County,* 29 Cal.3d 837, 842, 176 Cal.Rptr. 533, 536, 633 P.2d 198, 201 (1981); *California-Hawaii Development, Inc. v. Superior Court, County of Santa Clara,* 102 Cal.App.3d 293, 297, 162 Cal. Rptr. 365, 367 (1980).

None of the California cases holding that notices remain on the record during appeals have considered directly the question of whether they remain on record after final judgment at the trial court level but *before* an appeal actually has been filed. It is implicit in these decisions, however, that following final judgment at the trial court level notices of lis pendens remain on the record at least during the statutory time period within which to file an appeal. *See, e.g., Howden-Goetzel v. Superior Court, County of Alameda,* 7 Cal.App.3d 135, 138–39, 86 Cal.Rptr. 323, 326 (1970) (noting

that notices of lis pendens remain on the record from the time of an action's commencement until its final determination upon appeal). Retaining a notice on the record after final judgment but before the taking of an appeal also furthers the underlying purpose of lis pendens notices, i.e., to put all potential purchasers of the property in question on notice that the title and other rights relating to the property are the subject of litigation. Under California law a notice of lis pendens remains on the record following final judgment in the trial court for at least as long as the statutory time within which an appeal must be filed. Under Fed.R.App.P. 4(a)(1) a notice of appeal must be filed within thirty days after the date of entry of the judgment.

Therefore, even if this court dismisses Murdock's action—as it should—this dismissal does not expunge the notice of lis pendens filed by Murdock. This notice should remain on the record for at least thirty days after the entry of this dismissal. If Murdock has not filed a notice of appeal within that time FSLIC should be allowed to renew its motion to expunge. If Murdock does file a notice of appeal within that time the notice of lis pendens naturally will stay on the record.

The second argument by FSLIC in support of its motion to expunge is that this action does not affect real property and thus cannot be the basis of a notice of lis pendens. This argument is meritless.

Section 409.1 makes clear that the party filing a notice of lis pendens must show to the satisfaction of the court, by a preponderance of the evidence, that the action affects title to or right of possession of the real property described in the notice.

In determining whether an action affects title to real property, the relevant question is whether title to the property would be affected if the plaintiff were to prevail on its claim. *Malcolm v. Superior Court, Santa Clara County,* 29 Cal.3d 518, 526–28, 174 Cal.Rptr. 694, 698–99, 629 P.2d 495, 499–500 (1981). The plaintiff must make a "prima facie" case of the merits of his claim, which means that he must make an

evidentiary showing, by affidavit or such other evidence as the court may permit, that he would be entitled to relief if his evidence is credited. *Id.* at 528 & n. 6, 174 Cal.Rptr. at 699–700 & n. 6, 629 P.2d at 500–501 & n. 6. The California legislature, however, did not intend to transform the pre-trial expungement procedure into a type of minitrial on the merits of the case. *Id.* at 526, 174 Cal.Rptr. at 698, 629 P.2d at 499. Thus, the plaintiff need not demonstrate the likelihood of its success at trial in order to avoid expungement. *Id.*

It is clear that an action to foreclose an equitable lien, such as a vendor's lien, on real property is "clearly one which affects title or the right to possession of real property." *Okuda v. Superior Court,* 144 Cal. App.3d 135, 141, 192 Cal.Rptr. 388, 392 (1983). An established lien "is a direct charge or encumbrance upon the property" and the foreclosure of a lien can result in a forced sale of the property. *Id.*

In the case at hand Murdock clearly has satisfied its burden of showing by a preponderance of the evidence that if it ultimately prevails on appeal in its attempt to foreclose its vendor's lien on the property in question such action will affect title to the real property in question. Murdock has produced a number of exhibits demonstrating that this action potentially affects the real property in question.

The third and final argument put forth by the FSLIC in support of its motion to expunge the notice of lis pendens is that Murdock has waived its vendor's lien by taking a subordinated note. This argument is unpersuasive.

It is settled that if a vendor does any act manifesting an intention on his part not to rely on the lien thus given by law for the payment of the purchase money, such as taking security therefor, without an express agreement that he may still have his vendor's lien, the lien will not exist. *Finnell v. Finnell,* 156 Cal. 589, 594–95, 105 P. 740, 742 (1909); *McGreevy v. Constitution Life Insurance Company,* 238 Cal.App.2d 364, 369, 47 Cal.Rptr. 711, 715 (1965) (quoting *Finnell*). But the lien is presumed to exist, and is an incident of the transaction of sale, in all cases unless the intention of the vendor that it shall not exist be clearly manifested by his acts or declarations, and the burden of proof is on the vendee or his successors to show this intention. *Finnell,* 156 Cal. at 594–95, 105 P. at 742; *McGreevy,* 238 Cal.App.2d at 369, 47 Cal. Rptr. at 715. The act manifesting such an intention must be one substantially inconsistent with the continued existence of the lien, and cannot be inferred from the mere fact that the parties may not have contemplated the assertion of the lien in the first place. *Finnell,* 156 Cal. at 594–95, 105 P. at 742; *McGreevy,* 238 Cal.App.2d at 369, 47 Cal.Rptr. at 715.

In the case of *Royal Consolidated Mining Co. v. Royal Consolidated Mines Co.,* 157 Cal. 737, 110 P. 123 (1910), such a waiver was found to exist and to control the question of the precedence of the vendor's lien. There the court found that the facts surrounding the sale were such as to establish an inferential waiver of the vendor's lien. The essential situation created by the acts of the sellers was that the entire plan for the sale of the mining property necessitated the borrowing of money by the buyer from a third party as an essential part of the program, and that this total plan was such as to be vitally inconsistent with any thought that the sellers would retain the priority of the vendor's lien.

In *McGreevy* the court held that the vendors had *not* waived their lien on oil and gas leases, despite the fact that a portion of the purchase price was secured, despite the fact that the vendors expressly consented in writing to the resale of the property by the vendee, and despite the fact that the subsequent vendee obtained a loan secured by a first deed of trust on the property in order to pay the purchase price. *McGreevy,* 238 Cal.App.2d at 365–71, 47 Cal.Rptr. at 712–15.

In the case at hand the FSLIC contends that Murdock waived its vendor's lien by

taking a subordinated note. In support of this argument the FSLIC points to language in the note providing that "The payment of principal and interest on this Subordinated Note is hereby expressly subordinated in right of payment on liquidation to the extent and in the manner hereinafter set forth...." FSLIC also relies upon and argues that this case is similar to the *Royal Consolidated Mining* case.

FSLIC has failed to carry its burden of establishing that Murdock intended to waive its vendor's lien merely because it took a subordinated position on the note. Murdock's actions and declarations do not "clearly manifest" its intention to waive its lien, nor are these actions and declarations "substantially inconsistent" with the continued existence of the lien. *Finnell*, 156 Cal. at 595, 105 P. at 742; *McGreevy*, 238 Cal.App.2d at 370, 47 Cal.Rptr. at 715. In fact, the note expressly provides that none of the "subordination provisions" contained therein "shall:"

> prevent the Holder [Murdock] from exercising all remedies otherwise permitted by applicable law upon default under this Subordinated Note, subject only to the rights, if any, under these subordination provisions of the holders of Senior Liabilities in respect of cash, property or securities of the Association payable upon the exercise of any such remedy.

Thus, the note reflects Murdock's intention to reserve remedies such as vendor's liens. Finally, it should be noted that the FSLIC's reliance on the *Royal Consolidated Mining* case is misplaced because there was a great deal more evidence in that case than in the present one evidencing the vendor's intention to waive its vendor's lien. This court rejects the FSLIC's argument that the notice of lis pendens should be expunged on the ground that Murdock has waived its lien on the property in question.

None of the arguments put forth by the FSLIC in support of its motion to expunge the notice of lis pendens is persuasive. Its motion to expunge is denied.