HAROLD L. KELLER, Plaintiff-Appellant, v. ANTIOCH SAVINGS & LOAN ASSOCIATION *et al.*, Defendants-Appellees.

Second District Nos. 2—85—0040, 2—85—0163 cons.

Opinion filed April 30, 1986.

George S. Bellas & Associates, and David A. Novoselsky, both of Chicago, for appellant.

William J. McKenna, Anthony Burt, John L. Rogers, and Robert W. Patterson, all of Hopkins & Sutter, of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Harold L. Keller, appeals from the dismissal of his first amended complaint against the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for the Antioch Savings and Loan Association (Antioch). Antioch was declared insolvent by the Federal Home Loan Bank Board (FHLBB), and the FSLIC was appointed as receiver for Antioch. The FSLIC was substituted as proper party for Antioch and filed a motion to dismiss which was granted, the court finding it lacked jurisdiction over the FSLIC. The single issue on appeal is whether the motion to dismiss was properly granted.

Essentially, the facts alleged in Keller's first amended complaint are that Keller and First Antioch Corporation, a wholly-owned subsid-

iary of Antioch, entered into a joint venture agreement on October 1, 1978. First Antioch Corporation, which assigned to Antioch all of its interests in the joint venture, was also sued, but we are concerned here only with the proceeding against Antioch. The primary purpose of the agreement was to acquire and develop a 70-acre parcel of land in Marengo Township, McHenry County. Antioch's capital contribution was a loan in the amount of $750,000. Keller alleged that he expended large amounts of his personal assets and time in obtaining the necessary zoning, environmental and building permits with no compensation. He also alleged that Antioch failed to fund construction of phase I of the development of the property as required by the agreement, and that he and Antioch had verbally agreed to extend the October 31, 1981, repayment date by which Antioch's capital loan was required to be repaid in full to avoid forfeiture. Keller claims he was advised by officers and agents of Antioch that it was not necessary to commit this extension to writing. Nevertheless, Keller was informed by a letter dated August 18, 1982, that Antioch was forfeiting his interest in the joint venture.

Keller's five-count complaint sought an injunction prohibiting Antioch from alienating its interest in the property during the pendency of the action; a declaratory judgment that the forfeiture of Keller's interest in the joint venture agreement and the property is a penalty and incapable of enforcement by Antioch; $1 million in damages for false representation and breach of contract; and specific performance of the terms and conditions of the joint venture agreement.

On July 7, 1983, the FHLBB found that Antioch was insolvent in that its assets were less than its obligations to its creditors and others and appointed the FSLIC receiver. The FSLIC filed a motion to substitute as proper party for Antioch on December 1, 1983, which was granted. A motion to dismiss the complaint was then filed by the FSLIC which stated that as the Home Owner's Loan Act generally provides that no court may take any action affecting the receivership (12 U.S.C. sec. 1464(d)(1982)), the court lacked subject matter jurisdiction. The motion also stated that section 406(c)(1)(B) of the National Housing Act, as amended, provides that the FSLIC, as statutory receiver, has the responsibility of liquidating Antioch's assets in an orderly manner (12 U.S.C. sec. 1729(b)(1)(A) (1982)) and to "settle, compromise, or release claims in favor of or against" Antioch (12 U.S.C. sec. 1729(d) (1982)). Therefore, any party with a claim against a savings and loan in receivership is required to file the claim with the FSLIC. The motion was granted December 14, 1984, the trial court finding that it did not have jurisdiction over defendant FSLIC. This

appeal followed.

Keller initially argues that the dismissal should be reversed because the Federal district court case presented to the trial court as the primary authority upon which the FSLIC based its motion to dismiss was reversed by the United States Court of Appeals for the Fifth Circuit in *North Mississippi Savings & Loan Association v. Hudspeth* (5th Cir. 1985), 756 F.2d 1096, *cert. denied* (1986), ___ U.S. ___, 88 L. Ed. 2d 768, 106 S. Ct. 790. However, the original opinion filed April 5, 1985, upon which Keller relied, was withdrawn on rehearing and was changed to an affirmance on May 23, 1985, the day before Keller's initial brief was herein filed.

In *Hudspeth*, the North Mississippi Savings and Loan Association filed an action in State chancery court seeking a declaratory judgment that a deferred compensation agreement with its former president either did not exist or was terminable. Former president Hudspeth counterclaimed for specific performance or damages for breach of contract. The savings and loan was then declared insolvent and the FSLIC was appointed receiver. The FSLIC terminated the compensation contract. The case was removed to Federal court, and the FSLIC filed a motion to dismiss, which was granted by the district court. 756 F.2d 1096, 1099-1100.

In affirming the dismissal, the court of appeals cited the relevant statutes:

> "Except as otherwise provided in this subsection, no court may ***, except at the instance of the [FHLBB], restrain or affect the exercise of powers or functions of a conservator or receiver." (12 U.S.C. sec. 1464(d)(6)(C) (1982).)

and

> "In connection with the liquidation of insured institutions, the [FSLIC] shall have power *** to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board ***." (12 U.S.C. sec. 1729(d) (1982).)

The court noted that in explaining the Bank Protection Act of 1968 (12 U.S.C. secs. 1729, 1881 through 1884 (1982)), which made section 1464(d)(6)(C) applicable in receiverships of State thrift institutions, the senate confirmed that the FSLIC's authority "[i]n carrying out its receivership responsibilities *** would be subject only to the regulation of the Federal Home Loan Bank Board" (S. Rep. No. 1263, 90th Cong., 2d Sess. 10, *reprinted in* 1968 U.S. Code Cong. & Ad. News 2530, 2539). The court stated that "Congress wanted the FSLIC to be

able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities." *North Mississippi Savings & Loan Association v. Hudspeth* (5th Cir. 1985), 756 F.2d 1096, 1101.

The court then decided that the FSLIC's termination of the compensation contract was unquestionably an exercise of the FSLIC's powers as receiver and could only be challenged before the FHLBB. If Hudspeth remained unsatisfied, judicial review could then be sought under the Administrative Procedure Act. (5 U.S.C. secs. 701-706 (1982 & Supp. II 1984).) This is because any adjudication of Hudspeth's claims would modify the FSLIC's distributions, and would "restrain or affect" the FSLIC's powers as a receiver in violation of section 1464(d)(6)(C). *North Mississippi Savings & Loan Association v. Hudspeth* (5th Cir. 1985), 756 F.2d 1096, 1102.

The court also noted that its conclusion is further fortified by the existence of FHLBB regulations setting forth procedures for FSLIC payment of creditor claims. Under these regulations, the FSLIC gives notice to creditors to present their claims, and then may disallow claims "not proven to its satisfaction." Any disallowed claims are submitted to the FHLBB for review. (12 C.F.R. secs. 569a.8, 549.4 (1984).) This administrative process serves to hasten the resolution of the receivership proceedings, in keeping with the congressional purpose, and reflects the view of the FHLBB that the FSLIC is empowered to decide claims as part of its receivership function. 756 F.2d 1096, 1102-03.

■ While there are factual distinctions between the instant case and *Hudspeth*, the reasoning applies equally well here. Adjudication of Keller's claim for damages, specific performance or injunctive relief would clearly interfere with the FSLIC's function as receiver of Antioch. Only through the use of a single forum to determine the merits of claims can an orderly, equitable and efficient process of liquidation of a savings and loan association occur. Keller's claims, as Hudspeth's, "are switched to the administrative track by sec. 1464(d)(6)(C)." Keller "can challenge the FSLIC's actions before the FHLBB, and, if unsatisfied, can seek judicial review under the [Administrative Procedure Act]." *North Mississippi Savings & Loan Association v. Hudspeth* (5th Cir. 1985), 756 F.2d 1096, 1103; see also *First Savings & Loan Association v. First Federal Savings & Loan Association* (D. Hawaii 1981), 531 F. Supp. 251, 254.

Further, recent Federal district court decisions have followed *Hudspeth*, finding that the result reached in *Hudspeth* should be

adopted because it gives deference to the complex regulatory scheme adopted by Congress for liquidating troubled savings and loan associations. As it was the intent of Congress to provide for quick relief, it is not for the courts to frustrate the administrative process contemplated by Congress. *Rembold v. Gibraltar Savings & Loan Association* (W.D. Wash. 1985), 624 F. Supp. 1006, 1008; see also *Lyons Savings & Loan Association v. Westside Bancorporation, Inc.* (N.D. Ill. March 26, 1986), 636 F. Supp. 576; *Murdock-SC Associates v. Beverly Hills Federal Savings & Loan Association* (C.D. Cal. 1985), 624 F. Supp. 948; *Gibraltar Building & Loan Association, Inc. v. State Savings & Loan Association, Inc.* (N.D. Cal. 1985), 607 F. Supp. 722. ·

■ Although *Hudspeth* and the cases following it seem to be dispositive of this case, Keller presents several other arguments to support the position that his claim against Antioch should not have been dismissed. First, Keller argues that the mere fact that the FSLIC has been appointed as receiver does not bar State courts from proceeding with a purely State law cause of action filed prior to FSLIC involvement, citing *First Hawaiian Bank v. Alexander* (D. Hawaii 1983), 558 F. Supp. 1128, *Gully v. First National Bank in Meridian* (1936), 299 U.S. 109, 81 L. Ed. 70, 57 S. Ct. 96, *Goldman v. First Federal Savings & Loan Association* (7th Cir. 1975), 518 F.2d 1247. These cases are inapposite to the present case, and the argument is not persuasive. *Hudspeth* dealt with State law claims which the court held were properly resolved by the FSLIC, subject to review by the FHLBB. Clearly, the fifth circuit's conclusion that 12 U.S.C. secs. 1464(d)(6)(C) and 1729(d) prevent any court from adjudicating claims against an insured institution in receivership applies to State and Federal courts alike. See also *Murdock-SC Associates v. Beverly Hills Federal Savings & Loan Association* (C.D. Cal. 1985), 624 F. Supp. 948 (where the court held, in a case involving State law claims, that plaintiff's sole remedy was to file a claim with the FSLIC).

■ Keller next, in his reply brief, attempts to distinguish *Hudspeth*. He argues that, in this case, the measurement of damages is impossible because the value of his endeavors on behalf of the project is difficult to calculate and because the subject matter of the agreement is real estate which is unique and hard to value. Keller contends that he therefore requires equitable action by the court to protect his concept for the property development and his interest in the parcel of land because this is not available through the FSLIC.

A similar argument was raised in *Murdock-SC Associates v. Beverly Hills Federal Savings & Loan Association* (C.D. Cal. 1985), 624 F. Supp. 948, where the plaintiff contended that its suit to fore-

close a vendor's lien involved a complex sale and lease-back arrangement with respect to the property in question and that administrative remedies need not be exhausted if irreparable injury will result unless immediate judicial review is permitted. It was claimed that irreparable injury would result if the property was sold. The court found that argument unpersuasive and noted that section 1464(d)(6)(C) is a broadly worded statute which "prohibits courts from not only restraining but *affecting* not only the powers but also the mere *functions* of receivers of failed savings and loan associations. In employing such language Congress undoubtedly meant to prohibit any court from taking any action that might affect the functions of such receivers." (Emphasis in original.) (624 F. Supp. 948, 954.) The court also pointed out that the relevant statutes and regulations evidence Congress' intention that the administrative procedure should serve as the sole remedy for creditors of failed savings and loan associations and is adequate to protect their interests. (624 F. Supp. 948, 955-56.) The same is true here. Keller cannot show that the statutory scheme set out by Congress will deprive him of the relief he seeks. Also, he is adequately protected by his right to judicial review of any FSLIC determination. *Rembold v. Gibraltar Savings & Loan Association* (W.D. Wash. 1985), 624 F. Supp. 1006, 1008.

■ Keller also attempts to distinguish *Hudspeth* by arguing that the FSLIC had already disallowed the claim in *Hudspeth* whereas here he is challenging the validity of action taken prior to the existence of the Federal receivership. He further contends that his suit, unlike the suit in *Hudspeth*, requests injunctive relief which would not impede the FSLIC's timely disposition of claims. These are not convincing distinctions. *Hudspeth's* claim also was filed prior to the Federal receivership. (See also *Lyons Savings & Loan Association v. Westside Bancorporation, Inc.* (N.D. Ill. March 26, 1986), 636 F. Supp. 576.) Also, a court-imposed injunction on disposing of property clearly would interfere with the FSLIC's receivership functions.

■ Keller finally contends that the decision in *Hudspeth* is inconsistent with the statutory language of 12 U.S.C. secs. 1464 and 1729 and supreme court decisions regarding the function of receivers in liquidation, citing *Morris v. Jones* (1947), 329 U.S. 545, 91 L. Ed. 488, 67 S. Ct. 451, and *Riehle v. Margolies* (1929), 279 U.S. 218, 73 L. Ed. 669, 49 S. Ct. 310. Keller concludes that adjudication is not a function of a receiver as the judicial resolution of claims is a function distinct from a receiver's role of allocating assets to satisfy those claims. However, this is contrary to the view of the FHLBB, the enforcing agency for the relevant banking statutes, that the FSLIC is empow-

ered to decide claims as part of its receivership function. (See 12 C.F.R. secs. 569a.8, 549.4 (1984).) The FHLBB's opinion is entitled to our deference. (See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 845, 81 L. Ed. 2d 694, 704, 104 S. Ct. 2778, 2783.) Further, the fact that resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets (*North Mississippi Savings & Loan Association v. Hudspeth* (5th Cir. 1985), 756 F.2d 1096, 1102, *cert. denied* (1986), 474 U.S. ___, 88 L. Ed. 2d 768, 106 S. Ct. 790) indicates that Congress intended the FSLIC to adjudicate claims.

For the foregoing reasons, the trial court's decision to dismiss Keller's complaint against FSLIC as receiver for Antioch is affirmed.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.